## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MELANIE MANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| DAL GLOBAL SERVICES, LLC, | ) | JURY TRIAL DEMANDED |
| d/b/a UNIFI, a foreign corporation, | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT

Plaintiff Melanie Mann ("Plaintiff"), by and through her undersigned counsel, brings this Complaint to correct unlawful retaliation practices by Defendant DAL Global Services, LLC d/b/a Unifi ("DGS").

1.     This is an action involving the violation of Plaintiff's federal statutory rights under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C.  § 2000e, et seq. ("Title VII") for retaliation.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

1

3.     Venue is proper is proper in the Northern District of Georgia under 28 U.S.C. § 1391 (b) (1) and (2) because a substantial part of events or omissions giving rise to the claims occurred within the jurisdiction of this Court and because DGS is located in this District and is subject to personal jurisdiction in this District.

4.     In accordance with Title VII and the ADEA, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, received her Notices of Right to Sue (NRTS), and now, timely files this Complaint.  Thus, all conditions precedent to the institution of this lawsuit have been fulfilled.

**PARTIES**

5.     Plaintiff is a former employee of DGS.

6.     On July 17, 2020, Plaintiff filed a federal lawsuit against it for discrimination in violation of Title VII and the ADEA in the United States District Court for the Northern District of Georgia.

7.     DGS is a Delaware corporation with a principal place of business located at 980 Virginia Avenue, 4th Floor, Atlanta, Georgia 30354.

8.     DGS conducts business in this District and throughout the nation.

9.     In late 2018, Delta Air Lines sold a majority stake of its wholly owned subsidiary, DGS, to Argenbright Holdings, LLC which is owned by Frank

A. Argenbright.   In early 2020, DGS rebranded as "Unifi."   Headquartered in Atlanta, DGS provides services such as aircraft ground handling, aircraft maintenance, cargo handling, and other aviation-related services servicing over 170 airports within the United States.   DGS provides services to multiple airlines.

10.   At all relevant times, Plaintiff was an "employee" of DGS within the meanings of Title VII and ADEA.

11.   At all relevant times, DGS was a business entity employing fifteen (15) or more persons, and is an "employer" within the meanings of Title VII and the ADEA.

12.   This Complaint can be served on DGS through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## FACTUAL ALLEGATIONS

13.   Plaintiff worked as Executive Assistant to former DGS President, Adam Taylor ("former President Taylor") at DGS's location at 980 Virginia Avenue, Atlanta, Georgia 30354.

14.   Plaintiff's job duties included day to day management of President Taylor's calendar and meeting schedule, setting up and coordinating meetings, supporting President Taylor and the leadership team, participating in business planning meeting, assisting in the execution and coordination of business

meetings, preparing presentations, reviewing and organizing President Taylor's e-mail/voice mail across three platforms, liaising with other service providers, including IT as required.

15.     At all relevant times, Plaintiff had the skills to perform her job and successfully did perform her job duties.

16.     As part of her job duties as an executive assistant, former President Taylor arranged for Plaintiff to have access to his email box which contained his email and voicemail which "dropped" into his email box from the company's voicemail system.  Former President Taylor also required that Plaintiff listen to his voicemail messages on the company's voicemail system.

17.     Other executive assistants had access to the email and voicemail of the executive for whom they worked in the same manner as Plaintiff.

18.     Because Mr. Argenbright did not want Delta to have access to the email of the DGS executives he hired to replace the Delta DGS executives, he provided them with email addresses from his company, SecurAmerica, LLC. This allowed the emails and voicemail to be retained on SecurAmerica's server, which he controlled, as opposed to Delta's server.

19.     Therefore, while executives at DGS were given Delta email addresses, they communicated with SecurAmerica email addresses.

20.     In order for former President Taylor to access his SecurAmerica email, he required Plaintiff to use her laptop and create an Outlook box for him. Because former President Taylor had been without an executive assistant for months, he required Plaintiff to organize every email and voicemail he received from the beginning of his employment with DGS.

21.     Mr. Argenbright routinely stated that he was looking for "quicker, faster, smarter, younger" employees.

22.     Mr. Argenbright also favored trying to hire persons who were Chinese or Indian over hiring equally qualified persons who were Caucasian or African American.

23.     Mr. Argenbright believes that persons who are Chinese or Indian are smarter than other races, including Caucasians and African Americans.

24.     When describing the type of employee that he was looking to hire, Mr. Argenbright's external slogan was that he was looking for employees who were "quicker, faster, smarter."

25.     However, internally, Mr. Argenbright repeatedly stated that he was looking for employees who were "quicker, faster, smarter, younger."

26.     At times, Mr. Argenbright would state that he was looking for employees who were "quicker, faster, smarter, blank." Employees, including DGS executives, knew that when Mr. Argenbright used the word "blank" in this

context, he meant "younger."  And, he, in fact, did use the word "blank" to mean "younger."

27.    On more than one occasion, former President Taylor heard Mr. Argenbright state that he was looking to employ individuals who were "quicker, faster, smarter, younger."

28.    On more than one occasion, former President Taylor heard Mr. Argenbright state that he was looking to employ individuals who were "quicker, faster, smarter, blank" and former President Taylor understood that in this context that Mr. Argenbright meant the word "blank" to mean "younger."

29.    On more than one occasion, former President Taylor heard Mr. Argenbright state that he was interested in hiring Chinese and Indian employees over equally qualified Caucasian and African American employees.

30.    Former President Taylor received voicemail messages from Mr. Argenbright stating that he was looking for "quicker, faster, smarter, blank" and/or "quicker, faster, smarter, younger" employees.

31.    Plaintiff was very concerned when she heard Mr. Argenbright's statements and messages about wanting younger employees.

32.    Plaintiff spoke with former President Taylor on several occasions and told him that she did not meet Mr. Argenbright's model employee of "younger."

33.     Former President Taylor told Plaintiff that he would try to protect her from Mr. Argenbright's creation of a company with a specific type of employee – one who was "quicker, faster, smarter, younger."

34.     On October 18, 2020, DGS terminated Plaintiff claiming she said "fuck off" to DGS's General Counsel.

35.     Plaintiff did not say "fuck off" to DGS's General Counsel.

36.     On July 17, 2020, Plaintiff filed a lawsuit against DGS alleging that DGS terminated her on the basis of age in violation of the ADEA and/or race in violation of Title VII.

37.     Plaintiff alleged that Mr. Argenbright created a discriminatory culture and Plaintiff was required to listen to dozens of voicemail messages from Mr. Argenbright making discriminatory statements.

38.     DGS filed sued and continues to pursue five counterclaims against Plaintiff in retaliation for her protected activity of filing an EEOC Charge of Discrimination and filing a federal lawsuit.

39.     Defendant asserts two counterclaims Count IV (conversion) and Count V (tortious of interference) which futile, frivolous and filed solely in response to her lawsuit against it.

40.     Additionally, Defendant asserts claim(s) alleging that Plaintiff accessed DGS's email system months after her termination while knowing this is false or not retracting the claim(s) upon learning that is untrue.

## COUNT I – ADEA – RETALIATION

41.     Plaintiff repeats and incorporates by reference the above paragraphs above as set fully herein.

42.     The ADEA prohibits an employer from retaliating against any of its former employees for opposing any employment practice made unlawful by the ADEA, including, but not limited to, filing a complaint in federal court.   29 U.S.C. § 621.

43.     DGS's actions, as detailed above, in filing its untrue, futile, and/or frivolous counterclaims against Plaintiff because of her protected activity of filing a lawsuit constitutes unlawful intentional retaliation in violation of the ADEA.

44.     DGS willfully and recklessly disregarded Plaintiff's federally protected rights.

45.     Accordingly, DGS is liable for all damages Plaintiff has sustained as a result of DGS' unlawful retaliation.

## COUNT II – TITLE VII RETALIATION

46.     Plaintiff repeats and incorporates by reference the above paragraphs above as set fully herein.

47.     Title VII prohibits an employer from retaliating against any of its former employees for opposing any employment practice made unlawful by the Title VII, including, but not limited to, filing a complaint in federal court.  42 U.S.C.  § 2000e, et seq.

48.     DGS's actions, as detailed above, in filing its untrue futile, and/or frivolous counterclaims against Plaintiff because of her protected activity of filing a lawsuit constitutes unlawful intentional retaliation in violation of Title VII.

49.     DGS willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against her was undertaken in bad faith.

50.     Accordingly, DGS is liable for damages to Plaintiff, including, compensatory damages, punitive damages, injunctive relief, attorney's fees and costs, and all other appropriate damages, remedies, and other relief available under the Title VII.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment in her favor in the form of an Order of this Court:  Awarding Plaintiff damages including, but not limited to, declaratory, liquidated, compensatory, punitive, reasonable attorneys' fees and expenses, and all other relief permitted under the ADEA and/or Title VII and any further relief as the Court deems just and proper.

Respectfully submitted this 19th day of September, 2021.

MARTIN & MARTIN, LLP

By:    /s/Kimberly N. Martin
       Kimberly N. Martin
       kimberlymartinlaw@gmail.com
       Georgia Bar No. 473410

       MARTIN & MARTIN, LLP
       Post Office Box 1070
       Tucker, Georgia 30085
       (404) 313-5538